AB:SEF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M10-1054**

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

TRAYARN SINGLETARY,

        Defendant.

FILED UNDER SEAL
AFFIDAVIT AND
COMPLAINT IN
SUPPORT OF APPLICATION
FOR ARREST WARRANT
(21 U.S.C. § 846)

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

    JAMES G. LEE, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, in or about September 2009, within the Eastern District of New York and elsewhere, the defendant TRAYARN SINGLETARY, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 100 grams or more of a substance containing heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

    (Title 21, United States Code, Section 846)

    The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1]    Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant

1. I have been a Special Agent with the FBI for approximately 24 years. My information in this case comes from discussions with other law enforcement agents, including officers of the Suffolk County Police Department, and my direct participation in the investigation.

2. On or about and between September 24, 2009 and September 25, 2009, law enforcement agents acting pursuant to a court-authorized wiretap intercepted calls between Robert Spatafora and Joseph Alonso and between Spatafora and the defendant. Relevant portions of some of these calls are excerpted below. Based upon my training and experience, my participation in this investigation and my conversations with other law enforcement agents and witnesses, I believe that these conversations concern a plan to steal several thousand dollars worth of heroin.

3. On or about September 24, 2009, at approximately 8:08 p.m., law enforcement agents acting pursuant to a court-authorized wiretap intercepted a call between Robert Spatafora

---

facts and circumstances of which I am aware. For calls that were intercepted pursuant to a court-authorized wiretap, not all relevant portions of such conversations have been described. To the extent that quotations are cited below, the quoted segments are based on draft, not final, transcripts.

and Joseph Alonso.²ᐟ  The following is an excerpt from the conversation:

    SPATAFORA:    If tomorrow's good, we strike. If not, we'll do it Monday, but we'll watch it . . .

    ALONSO:    Alright.

    SPATAFORA:    [UI] tomorrow [UI] we'll still have to watch it tomorrow.

    ALONSO:    Well, I think we should at least get in there tomorrow, have a spot and then watch it from the inside.

    SPATAFORA:    Yeah anytime after nine tomorrow night.

4. Approximately twenty minutes later, law enforcement agents intercepted a call between Spatafora and the defendant, TRAYARN SINGLETARY.³ᐟ  The following is an excerpt from the conversation:

    SINGLETARY:    I'm at the game right now. I'm ready to go. What's good?

    SPATAFORA:    Well the kid just called me and he's like, "Should I go?" I go, "Listen," I go, "I think we should fucking ghost it for a couple of days or at least Friday night and if it's good, hit it. If not,

---

²ᐟ    The call was placed from the telephone number (516) 903-2345, a cellular phone registered to Robert Spatafora, to (631) 332-9669, a cellular phone registered to Joseph Alonso.

³ᐟ    The call was placed from the telephone number (516) 903-2345, a cellular phone registered to Robert Spatafora, to (631) 806-8582, a cellular phone registered to TRAYARN SINGLETARY.

3

we'll do it Monday but we'll scope it tomorrow." And he agreed.

5. On or about September 25, 2009, at approximately 1:32 p.m., agents intercepted a call between Spatafora and Alonso. The following is an excerpt from the conversation:

| | |
|---|---|
| SPATAFORA: | Um, I should be around tonight, you gonna be around? |
| ALONSO: | Yeah, fuck staking this thing out I think we should just . . . |
| SPATAFORA: | Yeah? |
| ALONSO: | . . . get it over with and do it. |
| SPATAFORA: | Yeah? |
| ALONSO: | Yeah. |
| SPATAFORA: | Alright, well call me and I'll see what he says, and we take it from there 'cause I mean we don't even gotta get our fuckin' hands dirty, which is the better way you know? |
| ALONSO: | Yeah, but do you trust him to be honest? |
| SPATAFORA: | A thousand per cent, yeah. |
| ALONSO: | Well I don't know them at all, that's why I wanna go and make sure . . . |
| SPATAFORA: | A thousand, you know I'm not gonna . . . |
| ALONSO: | . . . and look. |
| SPATAFORA: | Of course. |
| ALONSO: | Well plus, you know what, I went in there and got a visual of it too, so that's why. The guy fucking already . . . |
| SPATAFORA: | [UI] |

4

|  |  |
|---|---|
| ALONSO: | . . . you know mapped it out, whatever besides that. |
| SPATAFORA: | We're gonna have a spot right down the block where they're comin to us, ya know. |
| ALONSO: | Alright, cool. |

6.  At approximately 6:03 p.m., agents intercepted a call between Spatafora and Alonso. The following is an excerpt from the conversation:

|  |  |
|---|---|
| SPATAFORA: | Yeah, what are you, what's cooking? |
| ALONSO: | Oh, nothing. What was I gonna say, he he didn't, um, oh the guy got picked up last night supposedly at the Courtesy Inn, um, him and his wife and his runner got in trouble in the three rooms. |
| SPATAFORA: | Yeah. |
| ALONSO: | I don't know, ya know the . . . |
| SPATAFORA: | Yeah (inaudible). |
| ALONSO: | . . . some kid from Smithtown ratted 'em out, but they. . . |
| SPATAFORA: | Alright, well you're gonna go and either the locks are gonna be cut or it ain't gonna be locked. |
| ALONSO: | I know, exactly, that's what I'm saying, so I mean, before he, so . . . |
| SPATAFORA: | Alright, so go check it and call me. |
| ALONSO: | I'm not going in now. You gotta go at night, I mean. |
| SPATAFORA: | Why, it's driving by? |

5

| | |
|---|---|
| ALONSO: | What do you mean driving by?  No it's inside the storage thing.  I gotta get buzzed in.  I gotta be punch in the code. |
| SPATAFORA: | Yeah, that's alright, so you punch the code, go in, and just drive by the door.  You'll know if the lock's cut. |
| ALONSO: | Yeah, no, but if, now I saying if I go with my car, then they're gonna go to the cameras and see all the people's cars that were there that day. |
| SPATAFORA: | You think? |
| ALONSO: | Yeah, yeah, yeah that's why I don't I want to go by in my car so I want to Go onto the train tracks but at night. |
| SPATAFORA: | Alright, we gotta know, so when, how we gonna figure it out? |
| ALONSO: | I don't know, I didn't know maybe if you had a car or something there of your customers. |
| SPATAFORA: | I thought you had a rental? |
| ALONSO: | Yeah, no my grandparents have it, though.  They're out. |
| SPATAFORA: | Yeah, don't go nowhere. |
| ALONSO: | [UI] |
| SPATAFORA: | Alright, well figure it out, 'cause I'm jammed right now.  I really can't even stay on the phone, I got payroll.  So figure it out and call me back. |
| ALONSO: | Alright, alright. |

    7.    At approximately 7:36 p.m., agents intercepted a call between Spatafora and Alonso.  The following is an excerpt from the conversation:

| | |
|---|---|
| SPATAFORA: | What do you wanna do? |
| ALONSO: | Um, I don't care. I mean if I go over there I'm probably just gonna, uh, run in and do it, get it over with. |
| SPATAFORA: | Ha, ha, ha, ha, so you tell me what do you wanna do? I got, I got, I'm with him now I'll go grab one more guy and we'll do it. |
| ALONSO: | Uh, uh, I don't care it's up to you. I mean we'll get it done right now, if you want. I just gotta, I was getting my clothes ready right now. |
| SPATAFORA: | I thought he was there. |
| ALONSO: | No, he, he's in jail. He got picked up. I don't know if they know about his storage place, that's what I'm saying I mean we could just try buzzing in. I'm worried about like I said, when you buzz in you have to get out of the car at first when you come you have to pull up to it, but on the way out you, you have to get out the car and walk up to the key code and hit it. So it's just a plate you know, I mean. . . |
| SPATAFORA: | Yeah but can't you just walk in there? |
| ALONSO: | You wanna try just walking in? I'd rather just, uh, go from the MTA and hop the fence, you know, cut a hole in the fence or like, you know, place next door or something. Whatever, you wanna come scoop me and we'll go look at it? |
| SPATAFORA: | I would rather just fuckin' make sure it was good to go and then fuck we do what we gotta do. |
| ALONSO: | Whatever if we drive by. . . |

> SPATAFORA: They're not gonna know because if the cops hit it there's gonna be another lock on it.
>
> ALONSO: Yeah but I'm worried about, say if the guy. . . I mean I don't know, you don't think they're gonna run the plates or whatever I mean? I was gonna just see if take 'em off a car in a parking lot , the plates and just like take them off and by the time they run the plates [UI] I'll get rid of them.

8. At approximately 7:48 p.m., agents intercepted a call between Spatafora and Alonso. The following is an excerpt from the conversation:

> ALONSO: If you want we could just go with a regular car and scope it out. You're not going to be able to get into the storage place, it's just on Pine Aire Drive his unit is all the way in the back.
>
> SPATAFORA: I know but how are you gonna get in there.
>
> ALONSO: I'll bring bolt cutters, I'll just cut through the fence, or if anything we'll fuckin', maybe walk in on foot.
>
> SPATAFORA: Yeah but then you said there's cameras.
>
> ALONSO: There's only cameras when your first gonna go in, that's it. Only at the gate and then the second aisle there's one camera, and then the third aisle there's no cameras. We're not gonna be in the second one at all.
>
> SPATAFORA: I say we just drive in there.
>
> ALONSO: (clearing his throat)
>
> SPATAFORA: And just check everything.

| | |
|---|---|
| ALONSO: | What about if we just throw duct tape on our plate? |
| SPATAFORA: | We could do that, but what car? |
| ALONSO: | Um . . . |
| SPATAFORA: | I don't fuckin' even got a car period, I gotta get one. . . . |

\* \* \* \*

| | |
|---|---|
| SPATAFORA: | I guess I'll just do you want me to get the other guy too or no? |
| ALONSO: | Who, Tray? |
| SPATAFORA: | No, well I'm with him, do you want me to get one more guy? |
| ALONSO: | No fuck that then we'll just have to split more money. |
| SPATAFORA: | You sure? |
| ALONSO: | I was just gonna go with ya know uh by myself, uh I was gonna bring actually Chris' brother Sean, he'd be able to go with me so I don't know mean I'm going in the door I don't give a fuck. |
| SPATAFORA: | But it's up to you you tell me what you wanna do. |
| ALONSO: | I think (inaudible). |
| SPATAFORA: | You need a lookout guy don't you? |
| ALONSO: | You could be the lookout guy in the street.  If you somebody pull in we'll have cell phones on you know like fucking don't do it somebody's coming in whatever and me and him will run in. He's black, he'll be fine, it's a black area, he'll fit in. |
| SPATAFORA: | Alright so where do ya wanna meet? |

| | |
|---|---|
| ALONSO: | Ah, I'll come get you guys, I guess. |
| SPATAFORA: | You got a sweatshirt? |
| ALONSO: | Yeah, you want me to bring one for ya? |
| SPATAFORA: | Yeah. |
| ALONSO: | I got a couple of things. |
| SPATAFORA: | What size are they? |

9. The call between Spatafora and Alonso appeared to be interrupted. Immediately after it ended, agents intercepted another call between Spatafora and Alonso. The following is an excerpt from the conversation:

| | |
|---|---|
| ALONSO: | Yeah? |
| SPATAFORA: | What size are they? |
| ALONSO: | I don't know, large, maybe extra large. |
| SPATAFORA: | Yeah, if you got an extra large like sweatshirt, pullover zip up one, whatever you got. |
| ALONSO: | For who him or you? |
| SPATAFORA: | Me. |
| ALONSO: | Alright. |
| SPATAFORA: | Alright, I'm coming there now. |

10. According to information provided by a Cooperating Witness ("CW")[4/], SINGLETARY, Alonso and Spatafora traveled together by car to a storage facility in Bayshore, New York on or about the night of September 25, 2009, in order to obtain heroin that they believed was there. According to the CW, the storage locker targeted by SINGLETARY, Alonso and Spatafora was used as a distribution point for heroin, and on or about September 25, 2009, was believed to contain three or four shoeboxes, each filled with between $8,000 and $10,000 worth of heroin, as well as a large quantity of cash. Based upon my training and experience, and conversations with other law enforcement agents, it is my understanding that this quantity of heroin exceeds 100 grams, a quantity consistent with distribution. According to the CW, SINGLETARY, Alonso and Spatafora participated in a discussion regarding the heroin that was believed to be stored in the storage locker. During the discussion, SINGLETARY and Spatafora agreed to arrange for the sale of the heroin.

---

[4/]   The CW pled guilty pursuant to a cooperation agreement in the Eastern District of New York to a felony drug charge. The CW's information has been corroborated by, among other things, court-authorized wiretaps, physical surveillances, and statements by other witnesses. The CW is cooperating with the government in the hope of obtaining leniency in sentencing.

## SEALING

11. I request that this affidavit and an arrest warrant issued in connection therewith be sealed until further order of the Court. Public disclosure of this affidavit prior to SINGELTARY's arrest would jeopardize this investigation and would create a risk that the defendant would flee or otherwise attempt to evade prosecution.

WHEREFORE, your deponent respectfully requests that a sealed arrest warrant be issued for the defendant TRAYARN SINGLETARY so that he may be dealt with according to law.

*[signature]*
JAMES G. LEE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__13__ Day of September, 2010

T.
U.
E.